[Cite as *State v. Thomas*, 2011-Ohio-3932.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| STATE OF OHIO | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Julie A. Edwards, J. |
| -vs- | : | |
| | : | |
| RONALD THOMAS | : | Case No. 10-CA-125 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Court of Common Pleas,
                             Case No. 10CR34



JUDGMENT:                    Affirmed



DATE OF JUDGMENT ENTRY:      August 8, 2011



APPEARANCES:

For Plaintiff-Appellee          For Defendant-Appellant

BRIAN T. WALTZ                  WILLIAM T. CRAMER
20 South Second Street          470 Olde Worthington Road
4th Floor                       Suite 200
Newark, OH  43055               Westerville, OH  43082

*Farmer, J.*

{¶1} On January 22, 2010, the Licking County Grand jury indicted appellant, Ronald Thomas, Jr., on one count of kidnapping in violation of R.C. 2905.01, one count of aggravated robbery in violation of R.C. 2911.01, one count of robbery in violation of R.C. 2911.02, and one count of having weapons while under disability in violation of R.C. 2923.13. Each of the first three counts carried a firearm specification.

{¶2} The charges arose from an incident wherein appellant and several individuals conspired to rob Ebrima Sumareh. Mr. Sumareh was acquainted with Alexa Morris. Ms. Morris called Mr. Sumareh and asked for Percocets. Mr. Sumareh agreed to give Ms. Morris pills in exchange for sex. Mr. Sumerah arrived at Ms. Morris's residence. Once there, three individuals jumped Mr. Sumareh, beat him, and robbed his person and vehicle of its contents. Mr. Sumareh reported the incident to the police. Following an investigation, the police arrested appellant, along with Ms. Morris, her boyfriend Joshua Coey, and Travin Lister.

{¶3} A jury trial commenced on November 2, 2010. The jury found appellant guilty of the aggravated robbery and robbery counts with the firearm specifications. The kidnapping count was dismissed. The court found appellant guilty of the weapons count. By judgment entry filed November 4, 2010, the trial court merged the aggravated robbery and robbery counts, and sentenced appellant to an aggregate term of eleven years in prison.

{¶4} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:

I

{¶5} "BY EXCLUDING ALL OF THE WITNESSES AND EXHIBITS PROFFERED BY THE DEFENSE, THE TRIAL COURT VIOLATED THE RULES OF EVIDENCE, AND DEPRIVED THE DEFENDANT OF HIS RIGHT TO PRESENT A DEFENSE UNDER THE DUE PROCESS AND COMPULSORY PROCESS CLAUSES OF THE STATE AND FEDERAL CONSTITUTIONS."

II

{¶6} "DEFENDANT'S STATE AND FEDERAL DUE PROCESS RIGHTS WERE VIOLATED WHEN THE PROSECUTION UNDERMINED THE PRESUMPTION OF INNOCENCE BY INFORMING THE JURY THAT DEFENDANT HAD BEEN IN JAIL FOR NINE MONTHS PRIOR TO TRIAL."

I

{¶7} Appellant claims the trial court erred in excluding his proffered witnesses and exhibits. We disagree.

{¶8} The admission or exclusion of evidence lies in the trial court's sound discretion. *State v. Sage* (1987), 31 Ohio St.3d 173. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217.

{¶9} Appellant argues the trial court erred in rejecting his witnesses, Deputy Cozad, Sergeant Maziar, and Diane Brown, on Ms. Morris's jail contact with Mr. Coey in violation of a no-contact order, and excluding the testimony of Christina Royer on the meaning of "hit a lick." It is appellant's position that the trial court's ruling eliminated his

ability to demonstrate that Ms. Morris coordinated her testimony with Mr. Coey. The trial court excluded the testimony under the collateral matters rule and Evid.R. 608(B) which states the following

{¶10} "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid. R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

{¶11} "The giving of testimony by any witness, including an accused, does not operate as a waiver of the witness's privilege against self-incrimination when examined with respect to matters that relate only to the witness's character for truthfulness."

{¶12} Appellant argues Evid.R. 613 and 616 permit extrinsic evidence to prove prior inconsistent statements:

{¶13} "[Evid.R. 613] **(B) Extrinsic evidence of prior inconsistent statement of witness**

{¶14} "Extrinsic evidence of a prior inconsistent statement by a witness is admissible if both of the following apply:

{¶15} "(1) If the statement is offered solely for the purpose of impeaching the witness, the witness is afforded a prior opportunity to explain or deny the statement and

the opposite party is afforded an opportunity to interrogate the witness on the statement or the interests of justice otherwise require;

{¶16}  "(2) The subject matter of the statement is one of the following:

{¶17}  "(a) A fact that is of consequence to the determination of the action other than the credibility of a witness;

{¶18}  "(b) A fact that may be shown by extrinsic evidence under Evid.R. 608(A), 609, 616(A), 616(B) or 706;

{¶19}  "(c) A fact that may be shown by extrinsic evidence under the common law of impeachment if not in conflict with the Rules of Evidence.

{¶20}  "**(C) Prior inconsistent conduct**

{¶21}  "During examination of a witness, conduct of the witness inconsistent with the witness's testimony may be shown to impeach. If offered for the sole purpose of impeaching the witness's testimony, extrinsic evidence of the prior inconsistent conduct is admissible under the same circumstances as provided for prior inconsistent statements by Evid.R. 613(B)(2).

{¶22}  "[Evid.R. 616] In addition to other methods, a witness may be impeached by any of the following methods:

{¶23}  "**(C) Specific contradiction**

{¶24}  "Facts contradicting a witness's testimony may be shown for the purpose of impeaching the witness's testimony.  If offered for the sole purpose of impeaching a witness's testimony, extrinsic evidence of contradiction is inadmissible unless the evidence is one of the following:

{¶25}  "(1) Permitted by Evid. R. 608(A), 609, 613, 616(A), 616(B), or 706;

{¶26} "(2) Permitted by the common law of impeachment and not in conflict with the Rules of Evidence."

{¶27} The proffered testimony was as follows:

{¶28} "MR. BREHM: Well, some of what Mr. Waltz said is accurate. I think probably 80 percent of it. What my intention was, Mr. Thomas has given me information about certain violations of the jail rules. I've called - - and I have three sheriff deputies on call, Diane Brown, Deputy Cozar (phonetic) - - I'm sorry, Deputy Cozad and Sergeant Maizar. I have in my possession at this time jail records which verify that Alexa Morris was contacting the co-defendant using another inmate's name while she was incarcerated at the Licking County jail. She did admit to that in earlier testimony. I don't think - - she certainly wasn't forthright to the extent that we wanted her to be.

{¶29} "Additionally, there was a disciplinary proceeding at the jail. There was notation that she lied to the sheriff's department about doing that and then was apologetic for her untruthfulness. That would be the testimony that I would proffer into the record should you deny that. And I also have marked those jail records as exhibits here in this case." T. at 442-443.

{¶30} Defense counsel argued Ms. Morris purposely "attempted to contact a co-defendant [Mr. Coey] in this matter to help him." T. at 444. The trial court's ruling restricted the testimony on the issue to Ms. Morris's cross-examination. T. at 444-445.

{¶31} In order to address this issue, it is first necessary to review Ms. Morris's testimony. When Ms. Morris testified at trial, she was serving a sentence for kidnapping and robbery related to the incident sub judice. T. at 223-224. Ms. Morris testified she and Mr. Sumerah were acquaintances and he occasionally gave her Percocet pills. T.

at 224, 226. On the night of the incident, Ms. Morris called Mr. Sumareh for some pills. T. at 228. Mr. Coey was with Ms. Morris as they were boyfriend/girlfriend. T. at 226. Mr. Sumareh told Ms. Morris he would give her the pills in exchange for sex. T. at 228. Ms. Morris agreed, but never intended on going through with it, "I just thought, well, maybe I'll just take them from him." T. at 229. After getting off the phone, Ms. Morris and Mr. Coey discussed robbing him. T. at 229-230. Mr. Coey called some friends for backup. T. at 231. Mr. Lister and appellant arrived at Ms. Morris's residence. T. at 232-233. Appellant bragged about having a gun and Ms. Morris observed him with a semiautomatic. T. at 233. The four of them then discussed the robbery of Mr. Sumerah. T. at 234. Ms. Morris called Mr. Sumareh again to try and "hurry him up a little bit," and sent him a topless photograph of herself to make sure he would show up. T. at 235-236. Ms. Morris testified as to the plan devised by all four of them:

{¶32} "That I was going to have Mo [Mr. Sumareh] call me when he got to my house and then Travin, Josh and 'T' [appellant] were going to go in my basement, and there's a door downstairs and they were going to come out the basement door that leads outside, and I was going to - - when Mo came inside, I was going to have him take me to go get cigarettes, and then, when we got outside, they were supposed to come around and I was going to pretend like I was getting robbed, too." T. at 237.

{¶33} They also created disguises. T. at 237-238. The incident occurred as planned. T. at 241-242. Appellant, along with Mr. Coey and Mr. Lister, pushed Ms. Morris and Mr. Sumareh down. T. at 242. They beat Mr. Sumareh, kicked him, and hit him in the face. Id. Appellant had his gun out and ordered Mr. Sumerah to give him his wallet and the pills. Id. They then took Mr. Sumerah over to his vehicle and robbed it of

its contents. T. at 243-244. All the while, appellant had the gun pointed at Mr. Sumareh. T. at 243. At the conclusion of the robbery, appellant pointed the gun at Mr. Sumerah "and made him give him his jacket and he punched him a couple of times." T. at 245. All four divided the proceeds of the robbery. T. at 248.

{¶34} While Ms. Morris and Mr. Coey were in jail, Ms. Morris sent Mr. Coey a letter a few weeks before appellant's trial despite a no-contact order. T. at 267, 271. Ms. Morris used another inmates name to contact him. T. at 271. Defense counsel specifically asked Ms. Morris, "And in that letter, ma'am, you discussed your testimony in this case, what you were doing in this case and what your plan was for your testimony, correct?" T. at 272. Mr. Morris responded, "No." Id.

{¶35} Ms. Morris admitted to writing Mr. Coey numerous times while they were both in jail. T. at 273. Although Ms. Morris admitted to loving Mr. Coey, she denied trying to protect him with her testimony. T. at 274.

{¶36} As indicated supra, the proffered testimony involved Ms. Morris contacting Mr. Coey in violation of jail rules in order to plan her testimony to help him.

{¶37} We find the collateral matters rule applies to the proffered testimony as it did not specifically go to impeachment, but was an attempt to offer extrinsic evidence to establish a cover-up for Mr. Coey. We note the letter was not available for impeachment because it was shredded by the jail sergeant. T. at 272-273.

{¶38} Upon review, we conclude the trial court did not err or abuse its discretion in denying the testimony of Deputy Cozad, Sergeant Maziar, and Diane Brown, and the applicable exhibits.

{¶39} Appellant also argues the trial court erred in denying the testimony of Ms. Royer to refute the testimony of Detective Scott Keene and Ms. Morris that "hit a lick" means to do a robbery. Detective Keene testified as follows:

{¶40} "A. I asked to speak to him [appellant] about the robbery that occurred over here in Licking County and he told me the story of what happened, what his version of the story was. And Ronald told me on that day of the robbery, the 13th, that he had received or was contacted by Travin Lister who wanted to go hit a lick and that - - to go hit a lick with Joshua and Alexa.

{¶41} "Q. And to hit a lick for what?

{¶42} "A. Hit a lick for a robbery."

{¶43} "***

{¶44} "Q. Okay. Now, when you're talking to him and he uses the phrase hit a lick, do you wonder what that means?

{¶45} "A. No, it's - - I know what it means. In my profession - -

{¶46} "Q. Is it a common phrase?

{¶47} "A. It's a very common phrase to do a robbery.

{¶48} "***

{¶49} "Q. Okay. And when you're talking to Ronald, is it - - is there an understanding between you two that he knows that this means a robbery?

{¶50} "A. Yes.

{¶51} "***

{¶52} "Q. Okay. Did he indicate to you during this that he wasn't actually expecting a robbery to occur or anything of that nature?

{¶53} "A. No."  T. at 365-367, 372, respectively.

{¶54} As for Ms. Morris's testimony:

{¶55} "Q. Okay.  Have you ever heard the phrase hit a lick?

{¶56} "A. Yes.

{¶57} "Q. Do you know what that means?

{¶58} "A. To rob someone.

{¶59} "Q. Okay.  Are you aware of any other meaning for that?

{¶60} "A. No."  T. at 252.

{¶61} The proffered testimony as to Ms. Royer was as follows:

{¶62} "MR.  BREHM:  Your  Honor,  the  last  witness  is  a  Christina Royer.***Furthermore, she would indicate about the common usage of the term 'hit a lick' and what that means in society as far as a term of art meaning to go and buy drugs, not to rob somebody.  That would be the extent of her testimony here today."  T. at 450.

{¶63} The trial court denied the testimony under Evid.R. 701:

{¶64} "THE COURT: I'll sustain the objection to her testimony under 701, being testimony of a lay witness also.  She's not an expert.  It's not rational based on her perception.  It's not helping to understand her testimony or a determination of a fact in issue.  On that basis, I'll sustain the objection to her testimony also."  T. at 452.

{¶65} Harmless error is described as "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."  Crim.R. 52(A). Overcoming harmless error requires a showing of undue prejudice or a violation of a substantial right.

{¶66} Based upon the fact that appellant used the term and used it with the same interpretation as Detective Keene and Ms. Morris, we find the trial court's ruling did not unduly prejudice appellant's right to a fair trial.

{¶67} Assignment of Error I is denied.

II

{¶68} Appellant claims his due process rights were violated when the prosecutor unfairly commented on the fact that appellant was incarcerated at the time of the trial. We disagree.

{¶69} The test for prosecutorial misconduct is whether the prosecutor's comments and remarks were improper and if so, whether those comments and remarks prejudicially affected the substantial rights of the accused. *State v. Lott* (1990), 51 Ohio St.3d 160, certiorari denied (1990), 112 L.Ed.2d 596. In reviewing allegations of prosecutorial misconduct, it is our duty to consider the complained of conduct in the contest of the entire trial. *Darden v. Wainwright* (1986), 477 U.S. 168.

{¶70} This case involved an argument à la Johnnie Cochran: "If it doesn't fit, you must acquit." During closing argument, defense counsel brought up the fact that the coat that appellant was accused of taking from Mr. Sumerah and wearing did not fit him:

{¶71} "MR. BREHM: You also had the opportunity to see Mr. Thomas try on the leather coat. Ms. Morris testified in this case that Mr. Thomas had worn the leather jacket around. Mr. Thomas tried that coat on for you. It did not fit." T. at 497.

{¶72} On rebuttal, the prosecutor argued the following:

{¶73} "MR. WALTZ: Thank you, Your Honor. I just thought it might be funny to first off address the issue with the coat. My wife last year got the Wii fit. I don't know if

any of you guys have seen it. It's that balanced board that you step on, and she decided she wanted to get in better shape and she sort of shamed me into doing the same thing. So, about nine months ago, from that time, I'd say I'm about 30, 35 pounds lighter than I was then, which I'm very proud of and it's now officially on the record. That's about how long he's been in jail eating three meals a day, having the opportunity to - -

{¶74} "***

{¶75} "Point being he's had nine months to change his appearance, and I point out that while the jacket is a smidgeon short, it's not that different. And the fact that mine, which I had for a little while longer, probably doesn't fit the greatest either." T. at 498-500.

{¶76} During the presentation of evidence, appellant's recorded statement was played for the jury. T. at 379. Detective Keene indicated appellant was in jail when the recording was made to provide a general explanation as to the poor quality of the acoustics on the recording. Id.

{¶77} The issue was clearly invited by appellant's own counsel. Although the prosecutor's reference to appellant being in jail was error, we do not find it created any undo prejudice because of the prior reference by Detective Keene.

{¶78} Assignment of Error II is denied.

{¶79} The judgment of the Court of Common Pleas of Licking County, Ohio is hereby affirmed.

By Farmer, J.

Hoffman, P.J. and

Edwards, J. concur.


_s/ Sheila G. Farmer_____


s/ William B. Hoffman_____


_s/ Julie A. Edwards_____

JUDGES

SGF/sg 721

IN THE COURT OF APPEALS FOR LICKING COUNTY, OHIO

FIFTH APPELLATE DISTRICT

STATE OF OHIO                          :
                                       :
    Plaintiff-Appellee             :
                                       :
-vs-                                   :                    JUDGMENT ENTRY
                                       :
RONALD THOMAS                          :
                                       :
    Defendant-Appellant            :                    CASE NO. 10-CA-125


       For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Licking County, Ohio is affirmed. Costs to appellant.



                           _s/ Sheila G. Farmer_____


                           s/ William B. Hoffman_____


                           _s/ Julie A. Edwards_____

                                     JUDGES